Michael **SENDLEWSKI** and Carol Ann Sendlewski, Plaintiffs,

v.

The **TOWN OF SOUTHAMPTON**, et al., Defendants.

No. CV 89–0110.

United States District Court, E.D. New York.

April 12, 1990.

---

Eikenberry, Futterman & Herbert by Paul R. Levenson, New York City, for plaintiffs.

Scheinberg Schneps, DePetris & DePetris by Richard E. DePetris, Riverhead, N.Y., for defendants.

WEXLER, District Judge.

Plaintiffs Michael and Carol Ann Sendlewski, husband and wife, bring this action under 42 U.S.C. § 1983 against the Town of Southampton (the "Town") and numerous Town officials (collectively, "defendants") seeking declaratory, injunctive, and monetary relief and attorney's fees. Presently before the Court is defendants' motion to dismiss or, in the alternative, to stay the proceedings in this action pending the resolution of state court actions brought by the Town against plaintiffs. For the reasons below, the motion to dismiss is granted.

## I. *Background*

As alleged in the complaint, plaintiffs are individuals doing business as "We Got It Auto Parts" in the Town of Southampton, New York, on a six acre plot of land which they purchased in February 1986.[1] The land has been used as an auto salvage or junkyard business by a succession of owners since before 1957, in which year the Town enacted a zoning ordinance designating the area as residential. Following enactment of the zoning ordinance, however, its use as a junkyard continued as a preexisting nonconforming use. Then, in 1964, the Town began to license junkyards. In that year, the Town adopted a law regulating junk dealers and storage of junk, and, until 1983, the Town purportedly licensed plaintiffs' predecessor "to operate a junk and/or motor vehicle junk business." Plaintiffs maintain that licenses issued between 1964 and 1983 placed no restriction as to the area of the property on which junk could be stored.

In December 1984, the Town adopted a resolution under which plaintiffs' predecessor was required to submit with its licensing application a survey indicating where

---

**1.** From the papers, it appears that Michael Sendlewski operated the business under a lease since at least September 1985.

on the property junk was then being stored. Apparently, the Town had become concerned either that plaintiffs' predecessor had abandoned the nonconforming use or that the nonconforming use did not encompass the entire premises. The resolution stated that the license "shall be limited to those portions of the subject premises already appropriated to the junk business." Plaintiffs allege that a survey dated June 20, 1964, submitted in response to the resolution, showed an "average line of junk" bordering the northernmost two acres, but that the survey did not indicate that placement of junk was confined to the area north of that line. Based upon the survey, the Town issued a license in January 1985 to the plaintiffs' predecessor with the condition that operation of the junkyard be limited to the northern two acres. However, plaintiffs maintain that licenses subsequently issued to plaintiffs' predecessor, as well as to either or both plaintiffs, did not contain this condition.

Plaintiffs claim that when they applied for another junkyard license in June 1987, the Town never took action on their application. Instead, plaintiffs contend, in October 1987, the Town inspected the property and found that the plaintiffs had expanded the area of the premises used for junkyard purposes beyond the northernmost two acres. Consequently, on October 28, 1987, the Town issued an appearance ticket to Michael Sendlewski charging him with expanding a nonconforming use in violation of the Town zoning code, and resulting in an enforcement proceeding against him in the Town of Southampton Justice Court—the local criminal court. Expressly based on the 1984 survey, the violation complaint accompanying the appearance ticket alleges that Sendlewski,

> as owner of We Got It Auto Parts, a previously duly licensed motor vehicle junkyard which is in a CR–80 residential zone as prescribed in the Zoning Maps of the Town of Southampton and said motor vehicle junkyard is a pre-existing nonconforming use in said residential zone, did expand the area of use by storing and placing junked motor vehicles and junk parts on the southerly part of said parcel

> of land.... There had been no previous junk motor vehicles or junk parts stored or placed on the southerly portion of this parcel of land.

The action is currently pending.

In addition, in December 1987, the Town commenced a civil action in the New York State Supreme Court, Suffolk County, against both plaintiffs, seeking a preliminary and permanent injunction against the "expanded" nonconforming use. The Town alleges in the action that, without a permit, plaintiffs expanded the nonconforming use by storing and placing junk motor vehicles and junk parts on the southerly portion of the premises beyond that area indicated on the 1984 survey as the "average line of junk." In the action, plaintiffs cross-petitioned for an order compelling the Town to issue plaintiffs a junkyard license for the premises, and moved for an order staying prosecution of the justice court action.

On May 28, 1988, without opinion, the supreme court granted the Town's motion for a preliminary injunction and denied plaintiffs' cross-motions. However, on December 26, 1989, the Appellate Division, Second Department, reversed the supreme court's grant of the preliminary injunction, but otherwise affirmed the supreme court's order. In reversing the preliminary injunction and affirming the refusal to stay the justice court proceeding, the appellate division stated:

> As our review of the instant record discloses that the plaintiff [Town] has failed to establish that the southern portion of the subject premises was not in use as a junkyard in 1957 when its zoning ordinance became effective, or that the pre-existing nonconforming use of the southern portion of the premises as a junkyard has been abandoned, we conclude that the plaintiff has failed to establish a likelihood of success on the merits. Accordingly, the plaintiff is not entitled to a preliminary injunctive relief.

> Nevertheless, we reject the defendants' further contention that they are entitled to a stay of the zoning violation proceedings which have been instituted

against them in the Town of Southampton Justice Court. It is well established that criminal sanctions as well as injunctive relief are available to prevent a continuing violation of a town's zoning ordinances, and that the choice of one is not an election barring the other.

*Town of Southampton v. Sendlewski,* 549 N.Y.S.2d 434, 436 (App.Div. 2d Dep't 1989) (citations omitted).

Plaintiffs commenced this § 1983 action in January 1989. In this action, plaintiffs allege that defendants have unlawfully attempted to restrict them in the use of their property by disregarding the facts establishing that plaintiffs' use of the premises is a preexisting nonconforming use. Plaintiffs claim that the defendants' conduct, including failing to issue them a license and commencing the two state court actions, reflects an official Town policy of intentional, arbitrary and capricious interference with and deliberate indifference to their rights under the Constitution and laws of the United States. As a result of such conduct, they claim they've been deprived of property and liberty interests without due process. As for relief, plaintiffs ask this Court: (1) to enjoin the Town "from taking any action which has as its object or effect the denial, limitation, or interference with plaintiffs' right to utilize the entire Premises, or any part thereof, to conduct their junkyard business"; (2) to compel the Town to issue them an unconditional license to use the entire premises as a junkyard; (3) to declare that the defendants "acted without authority in seeking to restrict plaintiffs' right to utilize the entire Premises or any part thereof, to conduct their junkyard business"; and (4) to award plaintiffs damages and attorney's fees.

Defendants filed an answer in March 1989 but did not raise the applicability of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. However, defendants now raise the issue following recent substitution of their counsel in this action. By motion, defendants seek to dismiss or, alternatively, to stay this action pending resolution of the state court actions.

In addition to opposing defendants' motion, plaintiffs move to amend the complaint. Plaintiffs seek to amend the complaint to clarify that their claims are against certain Town officials in their official as well as individual capacities, and to add as defendants two new members of the Town board and the Town board itself, and to assert that defendants' actions also denied them equal protection. Because plaintiffs' motion to amend the complaint does not impact this Court's disposition of the abstention issue, it will not be further addressed.

## II. *Discussion*

As explained by the Supreme Court, *Younger* and its progeny

espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.... The notion of "comity" includes a "proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431–32, 102 S.Ct. 2515, 2520, 73 L.Ed.2d 116 (1982) (quoting *Younger,* 401 U.S. at 44, 91 S.Ct. at 750). This notion of comity "mandates application of *Younger* abstention not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 11, 107 S.Ct. 1517, 1526, 95 L.Ed.2d 1 (1987); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975); *see also Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521 (state administrative proceeding). The importance of the state's interest in a civil action may be discerned from the nature of

the action. For example, the importance of the state's interest may be demonstrated if the civil action is closely related to a criminal proceeding or if the civil action is necessary to vindicate important state policies. *Id.*

As the Second Circuit has recently made clear, to refuse to exercise jurisdiction a district court must answer the following questions affirmatively: (1) is there an ongoing state judicial proceeding; (2) does the state proceeding implicate important state interests; and (3) does the plaintiff have an adequate opportunity to raise the constitutional challenges in the state proceeding. *CECOS Int'l, Inc. v. Jorling,* 895 F.2d 66, 70 (2d Cir.1990); *see also Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521; *Christ the King Regional High School v. Culvert,* 815 F.2d 219, 224 (2d Cir.), *cert. denied,* 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987). Nevertheless, even if otherwise appropriate, abstention will be refused if the state proceeding was brought in bad faith or was motivated by a desire to harass. *Huffman,* 420 U.S. at 611, 95 S.Ct. at 1211; *Younger,* 401 U.S. at 54, 91 S.Ct. at 755; *see also* 17A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4255 (1988) (hereinafter Wright & Miller).

Plaintiffs contend that abstention is inappropriate for the following reasons: (1) they are not seeking to "enjoin" a pending state proceeding nor are they seeking relief directed to the state proceedings; (2) there is no "ongoing" state proceeding for *Younger* purposes; (3) even if the justice court proceeding is considered ongoing, it is nevertheless not a criminal proceeding; and (4) the state proceedings do not implicate important state interests.

Before addressing the three questions noted above, the Court disposes of plaintiffs' first and third contentions, both of which are without merit. Without denominating the relief they seek as an injunction, plaintiffs seek to derail the state proceedings. Were this Court to grant plaintiffs' request to enjoin the Town from taking actions aimed at denying, limiting or interfering with their use of the entire premises as a junkyard, the result would be "interference" with the state proceedings— an underlying concern of *Younger* abstention. *See, e.g., Davis v. Lansing,* 851 F.2d 72, 77 (2d Cir.1988) (*Younger* speaks of interference with state proceedings). It is inconceivable how a grant of this relief would not directly interfere with the pending state proceedings, both of which were instituted to enforce the Town's authority to regulate plaintiffs' use of their property. In fact, the pending state proceedings would have to be enjoined to grant the relief plaintiffs seek. *See Youth Int'l Party v. McGuire,* 572 F.Supp. 1159, 1164 (S.D.N.Y.1983).

Moreover, plaintiffs overlook the applicability of *Younger* principles to their requests for declaratory relief and damages. Where injunctive relief that would interfere with pending state proceedings would be barred, declaratory relief, absent unusual circumstances, is also barred. *Samuels v. Mackell,* 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971). Similarly barred is a suit for damages under § 1983 that would have a substantially disruptive effect on the state proceedings. *See Martin v. Merola,* 532 F.2d 191, 195 (2d Cir.1976); Wright & Miller § 4252, at 201.

Plaintiffs' contention that the justice court proceeding is not criminal or criminal in nature is without merit. Notably, in the complaint, plaintiffs refer to the justice court action as the "Criminal Proceeding." Moreover, plaintiffs ignore the applicability of *Younger* abstention, as discussed below, to noncriminal actions (such as the supreme court action here) which implicate important state interests. Thus, even if the justice court action were denominated noncriminal, *Younger* abstention would clearly apply to such action.

As for the first question in the *Younger* analysis, as noted above, there are two state proceedings currently pending—the justice court proceeding against Michael Sendlewski and the supreme court action against both plaintiffs. Nevertheless, plaintiffs contend that there is no "ongoing" state proceeding because the Town is

not moving either action forward. However, plaintiffs fail to indicate whether they've taken steps to dispose of either action. For example, plaintiffs can move to dismiss the civil action for want of prosecution. *See* N.Y. Civ.Prac.L. & R. § 3216 (McKinney 1970 & Supp.1990). Moreover, the defendants' attorneys represent that they have recently been substituted as attorneys for the Town in the civil action, and that that action will now be diligently prosecuted. Based on the record, the Court finds that the state proceedings are "ongoing" for *Younger* purposes.

As for the second question, plaintiffs contend that the state court actions do not involve important state interests because the actions present no disputed or unsettled questions of state law. However, for *Younger* purposes, these factors are by no means dispositive in determining the importance of the state's interest. Indeed, these factors are more significant in an analysis of other abstention doctrines not raised here. Plaintiffs further contend that the state's interest in regulating nonconforming uses is not sufficiently important. The Court does not agree. As discussed below, the right of a municipality to regulate land use and enforce its regulations through criminal and civil enforcement actions implicates important state interests.

In determining the substantiality of the state's interest in its proceedings, a court must "not look narrowly to [the state's] interest in the *outcome* of the particular case," but rather, to "the importance of the generic proceedings to the state." *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* — U.S. —, 109 S.Ct. 2506, 2516, 105 L.Ed.2d 298 (1989) (emphasis in original) (pointing out that "[i]n *Younger,* for example, we did not consult California's interest in prohibiting John Harris from distributing handbills, but rather its interest in 'carrying out the important and necessary task' of enforcing its criminal laws" (quoting *Younger,* 401 U.S. at 51–52, 91 S.Ct. at 754)); *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 628, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986) (looking to Ohio's general interest in preventing sex discrimination by employers, not to Ohio's specific concern with Dayton Christian School's firing of Linda Hoskinson). Consequently, this Court must look to the state's interest in criminal and civil proceedings to enforce the Town's zoning ordinances and land use regulations. From this perspective, it is clear that the justice court action implicates important state interests. Similarly, the supreme court action brought by the Town to obtain compliance with its zoning ordinance, implicates important state interests. *See, e.g., World Famous Drinking Emporium, Inc. v. City of Tempe,* 820 F.2d 1079, 1082–83 (9th Cir.1987).

In *World Famous Drinking Emporium,* the Ninth Circuit determined that important state interests were implicated by a civil action by the City of Tempe to enforce compliance with its public nuisance ordinances. Significantly, after noting that the city had the option of proceeding either by civil or criminal enforcement of its municipal ordinance, the court held that "the option of criminal enforcement demonstrates the importance of the underlying state interest." *World Famous Drinking Emporium,* 820 F.2d at 1083. The court then concluded that "[s]uch an action, in aid of and closely related to Tempe's zoning ordinance and akin to a criminal prosecution, clearly involves an important state interest." *Id.* On similar reasoning, it is clear that the civil enforcement action—the supreme court action—brought by the Town also implicates important state interests. Thus, the second requirement for invoking *Younger* abstention is satisfied.

Finally, as for the third question, notwithstanding plaintiffs' contention that they cannot both raise their claims in the justice court action, where only Michael Sendlewski is a defendant, they fail to allege that they cannot both do so in the supreme court action, where both are defendants. *See Northeast Mines, Inc. v. Town of Smithtown,* 584 F.Supp. 112, 114 (E.D.N.Y. 1984). Plaintiffs have apparently made no attempt to raise their constitutional claims in the supreme court proceeding. Accordingly, because the Court finds that plaintiffs have an adequate opportunity to present their constitutional claims in the

supreme court proceeding, the third requirement for *Younger* abstention is satisfied.

 Plaintiffs argue that even if *Younger* abstention is otherwise appropriate, defendants' purported bad faith makes it inappropriate. In *Younger*, the Supreme Court recognized that federal relief can be granted in a case to which *Younger* otherwise applies where there is a showing of bad faith or harassment in bringing or conducting the state proceeding. *Younger*, 401 U.S. at 50, 91 S.Ct. at 753; *see also Middlesex*, 457 U.S. at 435, 102 S.Ct. at 2523 (abstention would be inappropriate upon showing of "bad faith, harassment, or some other extraordinary circumstance"). Here, the state proceedings were initiated based on the 1984 survey, which the Town construed as showing that the nonconforming use was limited to the northern two acres, and on the 1987 inspection showing that the nonconforming use had been expanded. As noted above, the Town apparently required the survey from plaintiffs' predecessor in response to its concern that either the nonconforming use had been abandoned or the nonconforming use did not encompass the entire premises. The dispute between the parties concerns the scope of plaintiffs' nonconforming use, as to which plaintiffs have the burden of showing that the property had been used for the nonconforming purpose at the time the ordinance became effective. *Greene v. Town of Blooming Grove*, 879 F.2d 1061, 1065 (2d Cir.1989). Based on the record, which includes deposition testimony of certain Town officials, this Court finds that plaintiffs have failed to demonstrate that the Town brought the state actions in bad faith, *i.e.*, without a reasonable expectation of prevailing in the supreme court action or obtaining a conviction in the justice court action. *Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *see also* 32 Am Jur.2d, *Federal Practice and Procedure* § 1805 (1982). Furthermore, the appellate division's reversal of the preliminary injunction granted by the supreme court, as noted above, does not demonstrate the purported bad faith on the part of the Town and its officials. Accordingly, the bad faith exception to *Younger* abstention does not apply in this case.

## CONCLUSION

For the reasons above, the Court refuses to exercise jurisdiction on the basis of *Younger* and its progeny. Accordingly, the action is dismissed and the Clerk of the Court is directed to close the file in this case.

SO ORDERED.