**WANDYFUL STADIUM, INC., d/b/a Cafe Wandyful, and Wandalyn Williams Plaintiffs,**

v.

**TOWN OF HEMPSTEAD, Hempstead Town Board, and the Board of Zoning Appeals of the Town of Hempstead, Defendants.**

No. 97–CV–0629.

United States District Court, E.D. New York.

April 4, 1997.

Law Offices of Frederick K. Brewington by Frederick K. Brewington, Hempstead, NY, for Plaintiffs.

Ronald J. Levinson, Town Attorney of the Town of Hempstead by Charles S. Kovit, Deputy Town Attorney, Hempstead, NY, for Town of Hempstead.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The plaintiffs Wandyful Stadium, Inc. d/b/a Cafe Wandyful ("Cafe Wandyful"), and Wandalyn Williams (collectively the "plaintiffs") commenced this civil action against the defendants, the Town of Hempstead ("Town"), Hempstead Town Board ("Board"), and the Board of Zoning Appeals of the Town of Hempstead ("Zoning Board") (collectively the "defendants") seeking injunctive relief and equitable relief, disbursements, costs and fees brought under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution, the Constitution of the State of New York, and other state causes of action. In particular, the plaintiffs allege that the defendants have deprived them of the free exercise of their constitutionally protected rights through the promulgation, passage and enforcement of zoning and other ordinance, laws, rules and regulations.

This matter was commenced by the serving and filing of a Complaint and Order To Show Cause for a temporary restraining order and preliminary injunction on February 7, 1997. During the conference on that date, the Court signed the Order To Show Cause but denied the plaintiffs' request for a temporary restraining order. The Court set a March 21, 1997 date for oral argument on the preliminary injunction motion. On consent of both parties, the Court adjourned the March 21, 1997 date to April 4, 1997.

Currently before the Court is a motion brought on by an Order To Show Cause requesting the following relief:

(1) Pursuant to Fed.R.Civ.P. 65 enjoining the defendants, and all persons acting in concert with them, from

a) taking any action to enforce the Notice of Decision of the Board of Zoning Appeals dated October 30, 1996;

b) in any way limiting, interfering and/or restricting the operation of plaintiffs' business and use and occupancy of the premises known as 188 Hempstead Turnpike, West Hempstead, New York;

c) attempting to prevent dancing and music at said premises;

d) taking any adverse action against plaintiffs pending the outcome of this action, including the issuance of any further summons/violations and

2) Staying all other legal proceedings being conducted by the defendants against plaintiffs as same may exist in the Nassau County Supreme Court under Index # 95–33001, in the Nassau County District Court, Second District, Hempstead Part.

## I. BACKGROUND

The individual plaintiff Wandalyn Williams is the president and owner of plaintiff corporation Wandyful Stadium, Inc., which is a corporation organized and existing under the laws of the State of New York with its principal place of business at 188 Hempstead Turnpike, West Hempstead, New York.

The defendant Town of Hempstead is a municipal corporation with offices at Hempstead Town Hall, Hempstead New York. The Town of Hempstead exists and operates under and by virtue of the laws of the State of New York and is governed by the Town Board of the Town of Hempstead.

The defendant Hempstead Town Board is a body corporate and a political subdivision of the State of New York. It has the responsibility for policy making and administration of Town government.

The defendant The Board of Zoning Appeals of the Town of Hempstead is a municipal subdivision of the Town. The entity is empowered to prescribe, adopt and amend suitable ordinances, variances, rules and regulations for zoning in the Town of Hempstead. The Zoning Board is also charged with hearing applications, deciding on applications overseeing the implementation ordinances, variances, rules and regulations and serving as their guardians to assure compliance.

The plaintiff corporation is a commercial tenant on a parcel of land situated on the northeast corner of Hempstead Turnpike and Mayfair Avenue, West Hempstead, Town of Hempstead, New York. The premises is developed with a one-story building and accessory parking, with the restaurant occupying a 7,000 foot portion of the building. The accessory parking area contains approximately 140 parking spaces.

In 1994, the plaintiffs submitted completed building permit applications to the Town of Hempstead Building Department ("Building Department") requesting approval to convert the area of the building to a restaurant, to maintain parking in the required front-yard setback and for a variance in required off-street parking. According to the plaintiffs, the Building Department rejected the application because the request required the approval of the Zoning Board. Later in 1994, the plaintiff alleges that he sought approval from the Zoning Board. A public hearing was held on December 14, 1994 with respect to the plaintiffs' application. According to the defendants, at the hearing, the plaintiffs stated that the subject premises were to be used as a restaurant and not as a cabaret.

The defendants claim that these statements were made by the plaintiffs in response to the concerns of the opponents to the application that the premises might be use as a cabaret due to the large size of the bar area shown on the submitted floor plans.

By a decision dated February 1, 1995, the Zoning Board granted the plaintiffs' application for an off-street parking variance and permission to park in the front yard setback of the premises. Further the Zoning Board granted the plaintiffs' request to use the premises as a restaurant. According to the defendants, the decision of the Zoning Board dated February 1, 1995 was granted subject to several conditions, including that "there shall be no live music nor dancing on the subject premises." On April 7, 1995, the plaintiffs obtained the building permit which authorized conversion to a restaurant.

On May 18, 1995, the defendants reopened the case and held a hearing for the purpose of imposing additional conditions. As a result of that hearing, the Zoning Board's approval of February 1, 1995 was modified by the imposition of additional conditions. The defendants assert that the plaintiffs and the local civic associations agreed upon the new conditions.

According to the defendants, the Zoning Board received a letter dated September 8, 1995 from a civic association complaining of violations by the plaintiffs of the Zoning Board's conditions by permitting dancing on the premises. The defendants state that the letter noted that the plaintiffs provided dancing on opening night and that a July 13, 1995 Newsday article described the premises as a "night club" with references to a "sunken dance floor."

By resolution dated September 20, 1995, the Zoning Board re-opened the matter to consider the alleged violations of its no dancing condition, the hours of operation condition, and to consider the possible revocation of the off-street parking variance. The defendants scheduled a public hearing for October 25, 1995 to address those issues.

On October 25, 1995, the Zoning Board resolved to revoke the off-street parking variance. An Article 78 proceeding was brought

by the plaintiffs to review the revocation and a temporary restraining order ("TRO") was obtained to allow continuation of the restaurant use. On January 12, 1996, New York State Supreme Court Justice John P. Dunne extended the TRO conditioned upon petitioners' compliance with the condition of the Zoning Board's February 1, 1995 decision, namely, no dancing and restricted hours of operation.

On March 27, 1996, the plaintiff and the Zoning Board entered into a consent judgment, so ordered by Justice Dunne, in which the plaintiffs were permanently enjoined from permitting cabaret use upon the subject premises. The Consent Judgment further provided that the Town of Hempstead would ask the Zoning Board to reinstate the restaurant use and off-street parking.

According to the defendants, on July 9, 1996 the Town made a motion before Justice Dunne to hold the plaintiffs in criminal contempt for numerous violations of the Consent Judgment. By order dated November 14, 1996, the motion for contempt was denied based on improper service upon Wandy Williams. The defendants further claim that the plaintiff continued to use the premises as a cabaret, in violation of the Consent Judgment.

According to the plaintiff, Cafe Wandyful filed an application seeking a grant under Section 267(d)(2) of the Town Building Zone Ordinance, Section 196 of Article 16 of the Building Zone to use the premises for a place of public assembly and amusement as a cabaret with live music and dancing with no restrictions on its hours of operations. The Zoning Board held several public hearings on this matter and, in Notice of Decision dated October 30, 1996, denied the application for use of the premises as a place of public assembly and amusement as a cabaret with live music and dancing.

By Order To Show Cause dated January 9, 1997, the Town moved before Justice Dunne for permission to close the premises to the public until the 12:00 p.m. of the following day upon personal observation by a representative of the Department of Buildings of the use of the premises as a cabaret in violation of the Consent Judgment and ordi-nance. This motion was eventually adjourned to February 19, 1997.

On February 17, 1997, the plaintiff served a cross-motion before Justice Dunne, to enjoin enforcement of the Consent Judgment and ordinance claiming the ordinance to be unconstitutional, and presenting a request for relief under Article 78. On February 19, 1997, a hearing was held before Justice Dunne, in which a Code Enforcement Officer testified that he personally witnessed dancing by twenty-five to fifty patrons on a dance floor to amplified music numerous occasions after the date of the Consent Judgment. In addition, the Town's motion and plaintiff's cross-motion were submitted to Justice Dunne on that date, and which was subsequently denied. The defendants have further moved for reargument on the denial of their motion and have institute a new contempt motion with regard to the alleged violation of the Consent Judgment.

Before addressing the merits of the plaintiff's motion for a preliminary injunction, the Court will address the defendants' abstention argument because abstention would obviate the need for further analysis. Specifically, the defendants seek to interpose the doctrine of *Younger* abstention in order to have this case dismissed.

## II. *DISCUSSION*

### A. *The Younger Abstention Doctrine*

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, the Supreme Court:

> espoused a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.... The notion of "comity" included a 'proper respect for state function, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their separate functions in their separate ways."

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct.

2515, 2521, 73 L.Ed.2d 116 (1982) (quoting *Younger,* 401 U.S. at 44, 91 S.Ct. at 750–51.

■ This notion of comity "mandates application of *Younger* abstention not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceedings are so important that exercise of the federal judicial power would disregard the comity between the States and National Government." *Pennzoil Co. v. Texaco,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975); *see also Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521. The Second Circuit recently recognized the policy underlying *Younger* abstention in *Doe v. State of Connecticut, Dept. of Health Services,* 75 F.3d 81, 84 (2d Cir.1996).

■ Under the *Younger* abstention doctrine, "interest of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 237–38, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984). Abstention is warranted where an ongoing state judicial proceeding ... implicates important state interests, and affords an adequate opportunity to raise constitutional challenges. *CECOS Int'l, Inc. v. Jorling,* 895 F.2d 66, 70 (2d Cir.1990); *Christ the King Regional High School v. Culvert,* 815 F.2d 219, 224 (2d Cir.), *cert. denied,* 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2520–21, 73 L.Ed.2d 116 (1982).

■ The doctrine derives from the recognition that interference by a federal court with a state proceeding "would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with the federal courts to guard, enforce, and protect every right granted or secure by the Constitution of United States." *Temple of the Lost Sheep, Inc. v. Abrams,* 930 F.2d 178, 183 (2d Cir.), *cert. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991), citing, *Steffel v. Thompson,* 415 U.S. 452, 461–62, 94 S.Ct. 1209, 1216–17, 39 L.Ed.2d 505 (1974). "Even if otherwise appropriate, abstention will be refused if the state proceeding was brought in bad faith or was motivated by a desire to harass. *Huffman,* 420 U.S. at 611, 95 S.Ct. at 1211–12; *Younger,* 401 U.S. at 54, 91 S.Ct. at 755; *see also Pinckney v. Board of Education of the Westbury Union Free School District,* 920 F.Supp. 393 (E.D.N.Y.1996); *Sendlewski v. Town of Southampton,* 734 F.Supp. 586 (E.D.N.Y.1990).

### B. *The parties contentions with regard to the Younger Abstention Doctrine*

The plaintiffs' allege that they are entitled to seek injunctive relief from Federal District Court under an exception to the *Younger* abstention Doctrine. The plaintiffs claim that they have been subjected to harassment by the defendants and that the challenged statute is "flagrantly and patently violative" of the their constitutional rights. The plaintiffs contend that the ordinance in question, which requires a special exception permit for a cabaret use, is violative of the constitutional prohibition against prior restraints on free speech. The plaintiffs further, maintain that an ordinance that conditions the exercise of a protected freedom on the grant of a special permit, thus placing a prior restraint on a constitutional right, would necessarily rise to the "express constitutional prohibition" standard of the exception to the *Younger* Abstention Doctrine and allow the plaintiffs to see injunctive relief in federal court.

On the other hand, the defendants allege that this entire controversy presented a "garden variety" zoning case that does not belong in federal court. The defendants claim that this matter implicates extremely serious state interests, namely, the ability to adopt reasonable zoning standard to regulate fair separation between "4 a.m." nightclub/cabaret operations and otherwise quite residential areas. The defendants assert that because of those interests, the *Younger* Doctrine applies. In addition, the defendants state that the plaintiff has no chance of meriting an exception to the *Younger* doctrine because the defendants have not made a showing of

bad faith that would key the *Younger* exception. According to the defendants, the motion should be denied pursuant to the federal abstention doctrine.

Further, the defendants allege that the plaintiffs' constitutional claims are mooted by the uncontested fact that the plaintiff voluntarily signed a consent judgment on March 27, 1996, which was so order by Justice Dunne of the Nassau County Supreme Court. The judgment states that the plaintiffs expressly consented to be permanently enjoined from conducting cabaret use at the premise without a special permit for the Board of Zoning Appeals. Therefore, the defendants contend that the plaintiffs' ability to obtain a preliminary injunction is completely impaired because the consent judgment acts as a legal or equitable bar which prevents the plaintiffs from asserting the constitutional claims. The defendants also claim that the plaintiffs have not offered competent evidence to suggest that they signed the consent judgment under duress or coercive circumstances.

### C. *The Court's decision*
#### 1. *With Regard to the Younger Abstention Doctrine*

■ As for the first element in the *Younger* analysis, the Court finds that there is a state proceeding currently pending before Justice Dunne of the Nassau County Supreme Court where the defendants moved on January 9, 1997 for permission to close the premises to the public until 12:00 p.m. the following day if cabaret use of the premises is witnessed. In fact, on February 17, 1997, the plaintiffs served a cross-motion before Justice Dunne, to enjoin the enforcement of the consent judgment and ordinance, claiming the ordinance to be unconstitutional. As stated earlier, a hearing was held on February 19, 1997 before Justice Dunne with regard to the this issue. All motion paper and cross-motion have been submitted to Justice Dunne and the parties are awaiting a decision. Based on the above mentioned facts, the Court finds there is a "ongoing state proceeding" with regard to this matter which satisfies the first element of the *Younger* test.

As for the second requirement, the Court finds that the state proceeding implicates important state interests. In *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) the Supreme Court noted that in determining the substantiality of the state's interest in its proceeding, a court must "not look narrowly to [the state's] interest in the outcome of the particular case," but rather, to the "importance of the generic proceedings to the state." Thus, this Court must analyze the state's interest in criminal and civil proceeding to enforce the Town's zoning ordinance. *See Sendlewski v. Town of Southampton,* 734 F.Supp. 586, 591 (E.D.N.Y.1990). In this Court's view, the current supreme court action implicates important state interests. See e.g., *Sendlewski,* 734 F.Supp. at 591; *World Famous Drinking Emporium, Inc. v. City of Tempe,* 820 F.2d 1079, 1082–83 (9th Cir.1987).

In *World Famous Drinking Emporium,* the Ninth Circuit held that the civil action commenced by the city of Tempe to enforce adherence to its ordinances implicates important state interests. *World Famous Drinking Emporium, Inc.,* 820 F.2d at 1082–83. The Court continued by stating that the city of Tempe had the option to proceed to either by civil or criminal enforcement of its municipal ordinance, and that "the option of criminal enforcement demonstrates the importance of the underlying state interest." *Id.* at 1083. The Court concluded that "[s]uch an action, in aid of and closely related to Tempe's zoning ordinance and akin to a criminal prosecution, clearly involves an important state interest. Thus, the Court finds that in this case, the second requirement for invoking Younger abstention is satisfied.

As for the third and final requirement, the Court finds that the plaintiffs do have an adequate opportunity to raise the constitutional challenges in the state proceeding. However, the plaintiffs have apparently made no attempt to raise their constitutional claims in the supreme court proceedings. Accordingly, the Court finds that the third requirement for the *Younger* abstention doctrine is satisfied.

■ However, the plaintiffs' main argument is not that *Younger* is inapplicable but they are entitled to relief under an exception to the doctrine. As mentioned earlier, in *Younger*, the Supreme Court stated that federal relief is obtainable in a case to which *Younger* otherwise applies, where the there is a showing of bad faith or harassment in bringing the or conducting the state proceeding. *See Younger*, 401 U.S. at 50, 91 S.Ct. at 753–54; *see also Middlesex*, 457 U.S. at 435, 102 S.Ct. at 2522–23 (abstention would be inappropriate upon showing of "bad faith. harassment, or some other extraordinary circumstance" *Id.*).

In this matter, the current state proceeding in Nassau County Supreme Court was initiated based upon the alleged violation by the plaintiffs of the consent judgment signed by all relevant parties on March 27, 1996, and "so ordered" by Justice Dunne. During a hearing on February 17, 1997 before Justice Dunne, the defendants offered evidence, namely, eyewitness testimony, that the plaintiffs' violated the consent judgment by providing dancing and live and/or amplified music on the premises. Further, the consent judgment which was voluntarily entered into by the plaintiffs, expressly stated that the plaintiffs are permanently enjoined from using the premises as a cabaret. The plaintiff claims that the plaintiffs signed the consent judgment, which denied the right to have music and dancing on the premises, under threat of financial ruin and under extreme financial coercion. However, the plaintiff have not proffered facts to support their bald allegations.

This Court finds that the plaintiffs have not demonstrated that the defendants brought the state proceedings in bad faith, namely, without a reasonable expectation of prevailing in the supreme court action. Accordingly, the bad faith exception to Younger abstention does not apply in this matter.

Thus, the plaintiffs' motion for a preliminary injunction is denied.

In addition, with respect to Justice Dunne's decision referring the constitutional issues to the federal court for a decision, this Court, respectfully requests that Justice Dunne revisit his decision with regard to the federal questions that are involved in this matter. This Court is of the opinion that these issues should be entertained in one forum, namely, the state court. This case essentially involves a "garden variety" zoning dispute with constitutional overtones, which should be decided by the state courts.

### 2. *The plaintiffs cannot meet the preliminary injunction standard*

■ In addition, even if the *Younger* abstention did not apply in this case, which it does, the Court finds that the plaintiffs cannot meet the applicable standard for obtaining preliminary injunction as enunciated in *Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979).

In the seminal case of *Jackson Dairy Inc.*, the Second Circuit set forth the applicable standard in this Circuit for obtaining preliminary injunctive relief.

According to *Jackson Dairy*, the movant must clearly establish the following:

"(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief" (*Jackson Dairy, supra*, 596 F.2d at p. 72); *see also Alan Skop, Inc. v. Benjamin Moore, Inc.*, 909 F.2d 59, 60 [2d Cir.1990]; *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972 [2d Cir.1989]).

This standard was recently reiterated by the Second Circuit in *Chemical Bank v. Haseotes*, 13 F.3d 569, 573 (2d Cir.1994) and *ICN Pharmaceuticals, Inc. v. Khan*, 2 F.3d 484, 490 (2d Cir.1993).

A preliminary injunction is considered an "extraordinary remedy that should not be granted as a routine matter" (*JSG Trading Corp. v. Tray–Wrap, Inc., supra*, 917 F.2d at p. 80; *see also Patton v. Dole*, 806 F.2d 24, 28 [2d Cir.1986]; *Medical Soc'y v. Toia*, 560 F.2d 535, 538 [2d Cir.1977]).

Fed.R.Civ.P. 52(a) requires that the district court sufficiently set forth its findings to permit appellate review (*See Society for*

**592**

*Good Will to Retarded Children, Inc. v. Cuomo,* 902 F.2d 1085, 1088 [2d Cir.1990]; *Weitzman v. Stein,* 897 F.2d 653 [2d Cir. 1990] ).

However, where the injunction stays " 'government action taken in the interest pursuant to a statutory … scheme' [the Second Circuit] has determined that the movant must satisfy the more rigorous 'likelihood of success prong.' " *International Dairy Foods Ass'n v. Amestoy,* 92 F.3d 67, 70, (2d Cir.1996), citing, *Able v. United States,* 44 F.3d 128, 131–32 (2d Cir.1995); *see also Plaza Health Laboratories, Inc., v. Perales,* 878 F.2d 577, 580 (2d Cir.1989).

The Court finds that because the plaintiffs expressly signed the consent judgment dated March 27, 1996 in which they agreed that "[t]here shall be no live music nor dancing on the subject premises" and "there shall be no sound, noise or music emanation disturbing to the adjoining residents," they have no likelihood of success on the merits. Thus, even if the Younger abstention doctrine is not applicable, nevertheless, the Court will deny the motion for a preliminary injunction.

III. *CONCLUSION*

After reviewing the papers submitted by both parties, hearing oral argument, and for the reason set forth above, it is hereby,

**ORDERED**, that the plaintiffs' motion pursuant to Fed.R.Civ.P. 65 for a preliminary injunction is denied.

**SO ORDERED.**