JOSEPH F. BIANCO, District Judge:
Pro seplaintiffs Darlene F. Homere and Gerald Jean Baptiste ("plaintiffs") bring this action against the Incorporated Village of Hempstead ("the Village") and Stephanie Valder ("Valder" and, with the Village, "defendants"). Plaintiffs allege that, from 2008 through 2017, the Village conspired with Valder and other individuals to harass plaintiffs and to deprive plaintiffs of residential property. The first amended complaint[1] appears to assert claims against the Village for (1) malicious prosecution; (2) malicious abuse of process; (3) double jeopardy; (4) violations of substantive due process; (5) conspiracy; and (6) fraud.[2] With respect to Valder, the complaint appears to assert claims for conspiracy and fraud. On August 14, 2017, the Village moved to dismiss the complaint. (ECF No. 22.) Shortly thereafter, on August 18, 2017, Valder moved to dismiss the complaint as well. (ECF No. 23.) On October 18, 2017, the Court referred the motions to the Magistrate Judge Tomlinson. (ECF No. 28.)
Presently before the Court is a Report and Recommendation ("R&R") from Magistrate Judge Tomlinson advising the Court to dismiss the complaint. (ECF No. 30.) For the reasons explained below, after a de novoreview, the Court adopts the thorough and well-reasoned R&R in its entirety. However, the Court will grant plaintiffs leave to amend the complaint.
I. Standard of Review
12 A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. SeeDeLuca v. Lord, 858 F.Supp. 1330, 1345 (S.D.N.Y. 1994) ; Walker v. Hood, 679 F.Supp. 372, 374 (S.D.N.Y. 1988). As to those portions of a report to which no "specific written objections" are made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous. SeeFed. R. Civ. P. 72(b) ; Thomas v. Arn, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; Greene v. WCI Holdings Corp., 956 F.Supp. 509, 513 (S.D.N.Y. 1997). When "a party submits a timely objection to a report and recommendation, the district judge will review the parts of the report *359 and recommendation to which the party objected under a de novostandard of review." Jeffries v. Verizon, 10-CV-2686 (JFB) (AKT), 2012 WL 4344188, at *1 (E.D.N.Y. Sept. 21, 2012) ; see also28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").
II. Analysis
3 Having reviewed the full record and the applicable law, and having reviewed the R&R de novo, the Court adopts the thorough and well-reasoned R&R in its entirety. As an initial matter, Magistrate Judge Tomlinson properly disregarded the materials attached to plaintiffs' oppositions to defendants' motions to dismiss, (R&R 10), and the Court likewise declines to consider those materials. To the extent those materials contain facts pertinent to successfully alleging claims against defendants, plaintiffs should incorporate those facts in their second amended complaint.[3]
A. The Claims against the Village
45 As a threshold matter, Magistrate Judge Tomlinson correctly explained that, in order to state a claim against the Village, a municipal corporation, plaintiffs must allege (1) the existence of a municipal policy, practice, or custom (2) that caused the deprivation of their constitutional rights. (R&R 14-15.) Magistrate Judge Tomlinson concluded that plaintiffs have failed to allege either element. (R&R 16-20.) Plaintiffs object, and point to their allegations that "[t]he three main movers (Judge Brantley, Village Attorney DiSalvo, and Special Prosecutor Feinberg) of the Village of Hempstead have collaborated in what is stated in the Plaintiff's complaint." (Pls.' Obj. 8.) However, as correctly explained by Magistrate Judge Tomlinson, (R&R 16-20), such conclusory allegations are insufficient for this Court to conclude that it is plausible that a municipal policy, practice, or custom existed. Further, plaintiffs' objections fail to point to any factual allegations to support a plausible claim that the Village deprived them of their constitutional rights. Accordingly, the Court concludes that plaintiffs have failed to plausibly allege that the Village had a policy, practice, or custom that resulted in the deprivation of their constitutional rights, and dismisses the claims against the Village on that ground.
67 Magistrate Judge Tomlinson also determined that plaintiffs' claims suffer from additional pleading deficiencies. With respect to the malicious prosecution and abuse of process claims, Magistrate Judge Tomlinson concluded that the complaint failed to allege a lack of probable cause (for the malicious prosecution claim) or an excuse or justification (for the abuse of process claim). (R&R 20-21.) In objecting, plaintiffs point to an allegation that states, "Without probable cause - we were subjected to years of harassment by the Court." (Pls.' Obj. 11.) However, simply including the phrase "without probable *360 cause" is insufficient, and plaintiffs cannot point to any factual allegations to support a plausible claim that there was a lack of probable cause or a lack of an excuse or justification. With respect to the malicious prosecution claim, Magistrate Judge Tomlinson further concluded that the complaint does not allege that the prosecution ended favorably to plaintiffs. In response, plaintiffs point to allegations that the charges against them were dismissed in April 2014. (Pls.' Obj. 10.) However, as plaintiffs point out in their objections (id.), the complaint also includes allegations that a trial on the charges against them "took place and ended on April 11, 2016 and as of today no decision has been received." Accordingly, the Court agrees with Magistrate Judge Tomlinson that the complaint fails to plausibly allege that the prosecution against plaintiffs ended favorably to plaintiffs.
8 With respect to plaintiffs' claims for double jeopardy violations, Magistrate Judge Tomlinson concluded that plaintiffs "have failed to plead facts that plausibly support the theory that they have been either acquitted or convicted of criminal charges in the Village Court, that they have been prosecuted a second time following any conviction or acquittal, or that they have suffered multiple punishments for the same offense." (R&R 22-23.) The Court agrees. Plaintiffs' objections again fail to point to any factual allegations in the complaint that sufficiently allege double jeopardy violations.
9 As for the conspiracy claim against the Village, Magistrate Judge Tomlinson concluded that the claim should be dismissed because the supporting allegations are "entirely speculative and conclusory." (R&R 25.) The Court again agrees. Plaintiffs have failed to plausibly allege that there was any agreement between the Village and a private party to act in concert to inflict constitutional injury on plaintiffs. In their objections, plaintiffs point to the exact allegations that Magistrate Judge Tomlinson correctly found insufficient to establish a Section 1983 conspiracy claim. Accordingly, the conspiracy claim against the Village is dismissed.
Plaintiffs also appear to assert violations of their substantive due process rights. Magistrate Judge Tomlinson concluded that plaintiffs have failed to state a claim for substantive due process violations because the allegations, even taken as true, do not allege conduct that shocks the conscience. The Court agrees. Plaintiffs' objections are purely rhetorical, and fail to point to any allegations in the complaint. Accordingly, the Court dismisses the claims asserting violations of plaintiffs' substantive due process rights.
10 Finally, Magistrate Judge Tomlinson recommends that, to the extent plaintiffs assert state law claims against the Village, those claims should be dismissed for failure to serve a notice of claim. Plaintiffs' objections simply state that "Judge Tomlinson is wrong about Plaintiffs['] failure to file a Notice of Claim," but fail to establish that plaintiffs in fact served a notice of claim on the Village. Accordingly, to the extent plaintiffs attempt to allege state law claims against defendants, those claims are dismissed for failure to serve a notice of claim.
B. Claims against Valder
11 As noted above, plaintiffs appear to assert claims for conspiracy and fraud against Valder. With respect to the conspiracy claim, Magistrate Judge Tomlinson correctly concluded that plaintiffs have failed to allege that Valder conspired with the Village to inflict constitutional injuries on the plaintiffs. (R&R 27-28.) The Court agrees. In objecting, plaintiffs reassert arguments considered and correctly rejected by Magistrate Judge Tomlinson. In any event, the allegations upon which plaintiffs *361 rely-for example, that Valder was the only stenographer assigned to their case (Pls.' Obj. 19-20)-fail to plausibly allege that Valder conspired with the Village to deprive plaintiffs of constitutional rights. Accordingly, the Court dismisses plaintiffs' conspiracy claim against Valder.
Finally, Magistrate Judge Tomlinson concluded that "[p]laintiffs have failed to allege facts sufficient to plausibly show any of the elements of common law fraud." (R&R 28-29.) The Court agrees. Plaintiffs' objections to this conclusion are largely irrelevant, and fail to point to any allegations supporting a claim for fraud against Valder. (Pls.' Obj. 20.) Accordingly, the Court dismisses the claim for fraud against Valder.
III. Leave to Amend
12 Although plaintiffs have not requested leave to amend, the Court has considered whether plaintiffs should be given an opportunity to re-plead. Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). The Second Circuit has emphasized that district courts should not dismiss pro secomplaints "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." E.g.,Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) ; Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999). In light of plaintiffs' pro sestatus, and because the Court is unable to determine at this juncture that amendment would necessarily be futile, the Court grants plaintiffs leave to amend.[4]
IV. Conclusion
For the foregoing reasons and the reasons set forth in the R&R, IT IS HEREBY ORDERED that the Court adopts the thorough and well-reasoned R&R in its entirety. Accordingly, the first amended complaint is dismissed. The Court grants plaintiffs leave to submit a second amended complaint, which must be filed within 45 days from the date of this Order.
The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, in forma pauper isstatus is denied for the purpose of any appeal. SeeCoppedge v. United States, 369 U.S. 438, 444-45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).
SO ORDERED.
REPORT AND RECOMMENDATION
A. KATHLEEN TOMLINSON, Magistrate Judge:
I. PRELIMINARY STATEMENT
Pro Se Plaintiffs Darlene F. Homere and Gerald Jean Baptiste ("Plaintiffs") bring this action against Defendants Incorporated Village of Hempstead ("the Village") and Stephanie Valder ("Valder") (collectively, "Defendants"). Plaintiffs allege that between 2008 and 2017, the Village, in collusion with Valder and other private individuals, engaged in harassing conduct towards Plaintiffs for the ultimate purpose of depriving them of their residential property. Plaintiffs allege this conduct amounted to, among other things, malicious prosecution, fraud, abuse of process, and conspiracy. See generally Plaintiffs' Amended Complaint ("Am. Compl.") [DE 18].
*362 On August 14, 2017, the Village filed a motion to dismiss Plaintiffs' Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). See DE 22. Shortly thereafter, on August 18, 2017, Defendant Valder also filed a Rule 12(b)(6) motion to dismiss. See DE 23. Judge Bianco referred both motions to dismiss to this Court for a Report and Recommendation as to whether the motions should be granted. See October 18, 2017 Electronic Order. For the reasons which follow, the Court respectfully recommends to Judge Bianco that both motions to dismiss be GRANTED.
II. BACKGROUND
A. Facts Alleged in the Amended Complaint[1]
The following allegations and assertions have been taken from Plaintiffs' Amended Complaint. All facts alleged by Plaintiffs are assumed to be true for purposes of deciding the motions to dismiss and are construed in a light most favorable to Plaintiffs as the non-moving parties. See, e.g. , LaFaro v. N.Y. Cardiothoracic Grp. , 570 F.3d 471, 475 (2d Cir. 2009) ; Matthews v. City of N.Y. , 889 F.Supp.2d 418, 425 (E.D.N.Y. 2012). Importantly, pro se filings such as Plaintiffs' Amended Complaint are to be liberally construed. Shin v. Queens Hosp. Ctr. in Jamaica , No. 14-CV-7237, 2014 WL 7422664, at *3 (E.D.N.Y. Dec. 31, 2014). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Kneitel v. Silvery , No. 15-CV-6811, 2018 WL 526486, at *2 (E.D.N.Y. Jan. 22, 2018) (quoting Erickson v. Pardus , 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ). Accordingly, "the submissions of a pro se litigant must be ... interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons , 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted); McPherson v. Coombe , 174 F.3d 276, 280 (2d Cir. 1999).
1. Allegations Against the Village
Although the chronology of Defendants' alleged conduct is somewhat difficult to discern, the Court has distilled Plaintiffs' allegations against the Village as follows. Plaintiffs owned property located at 196 Long Beach Road in the Village of Hempstead, New York ("the Property"), where they were residential landlords. See Am. Compl. at 3. In 2008, Plaintiffs became subject to a "constant barrage of harassment by a housing inspector George Foster with the acquiescence of his superior Assistant Superintendent Joseph Simone. They colluded with a Section 8 tenant (Janice Henderson) to create [building code] violations for us to be charged with." Id. at 2. According to Plaintiffs, there is evidence that these building code violations were fraudulent based on the fact that "none were reported to Section 8." Id. at 3. Plaintiffs assert that in December 2009, they shared their grievances with the Mayor of the Village, Wayne Hall, who promised to assist them. Id. at 2. As a result of a request from Mayor Hall to Arthur Chenault, Superintendent of the Building Department, Plaintiffs learned on January 27, 2010 that close to fifty violations were dismissed by Matthew Feinberg, the special prosecutor for the Village. Id. Mr. Feinberg conveyed this news to Plaintiffs himself. Id.
In October 2013, Plaintiffs allege they "were brought back to Court to address the same charges that were dismissed by the special prosecutor on January 27, *363 2010." Id. at 2. According to Plaintiffs, this was a "new round of harassment as a means to gain leverage," which Village officials commenced when they "realiz[ed] they were exposed because [Plaintiffs] had retained an attorney and [ ] the charges would have to be dismissed." Id. at 4. Plaintiffs claim this new round of harassment began when Village officials "colluded with Tifanny Carter a Section 8 tenant, to create [building code] violations for [Plaintiffs] to be charged with."[2] Id. These charges included building code violations for the absence of smoke detectors, carbon monoxide detectors, and railings on the stairs, as well as a hole in the front door and mice droppings. Id.
In April 2014, Plaintiffs contend that a representative of the prosecutor's office verbally communicated to them through their attorney, Brian Davis, that the second "round" of building code violations would be dismissed. Id. at 2. Specifically, Mr. Davis was told that "everything will be dismissed," and that he "would get confirmation from the Court via email." Id. Mr. Davis never received any confirmation of the dismissal.[3] Id. Plaintiffs state that around this time in 2014, "disturbing allegations by the prosecution surfaced confirming what we knew all along to be a vendetta to bring us down by taking our properties." Id. These disturbing allegations included that the prosecutor's office (1) denied having dismissed the charges on January 27, 2010; (2) maintained that the Plaintiffs' appearance in court on January 27, 2010 was before a judge who had set a March 3, 2010 trial date; and (3) claimed it had obtained a warrant on March 3, 2010 for Plaintiffs' arrest because they failed to appear in court on that day.[4] Id.
According to Plaintiffs, the conduct of Village officials as described was part of a broad scheme "to keep [Plaintiffs] distracted and preoccupied in order to facilitate the complete takeover of [their] property by Mr. Levy, an official in the treasurer's Office in the Village." Id. at 3. In order to "takeover" the Property, Plaintiffs state that Mr. Levy manipulated tax records "by simply logging on, [and] enter[ing] a password and a few key strokes," so as to keep a tax lien hidden from Plaintiffs, and to prevent Plaintiffs from receiving a "Notice to Redeem." Id. As evidence of this alleged manipulation, Plaintiffs claim that "the tax record indicates that in 2008, while we were being prosecuted and persecuted as the owner of the premises, Mr. Levy was the owner of record of th[e] property."[5] Id.
In December 2014, Plaintiffs retained an attorney to obtain records from the Village pursuant to a public records request. Id. at 2. Specifically, Plaintiffs sought the transcript and audio recording of a proceeding the Village claimed was held in Village Court on January 27, 2010. Id. at 1. According to Plaintiffs, this proceeding never took place, id. at 4-6, and in response to their request, a "fabricated transcript was *364 released," while the audio was not. Id. at 2. The transcript was purportedly "fabricated to prosecute [Plaintiffs] for the same charges that were dismissed by the same Court on January 27, 2010." Id. Plaintiffs claim "[e]veryone connected to the Village Attorney's Office and the Village Court must have known the illegality of [fabricating a transcript]." Id. at 4. Likewise, Plaintiffs take specific issue with the Village's response to their subsequent motion to produce the audio, which stated that the audio was "Not available," as opposed to "Does not exist." Id.
Plaintiffs further claim that "the Court in the person of Ayesha K. Brantley," "Deputy Clerk Chris-Francois-Venant, who was the Court go between with Reportique Stenography," and Stephanie Valder, the court stenographer, were implicated in the alleged conspiracy to harass and distract Plaintiffs so as to deprive them of the Property. Id. at 4-5. Specifically, Plaintiffs assert that "when Ms. Brantley, the Village Justice, created the document referred to as [the] transcript, she was giving cover to the prosecutor (Mr. Feinberg) that fabricated records to validate our prosecution. To protect this cover, the Village Attorney and Ms. Brantley the Village Justice, coordinated their activities to keep us tied up in Court."Id. at 5. It was these individuals whom Plaintiffs maintain colluded with Tifanny Carter, one of their Section 8 tenants, "for violations to be created." Id.
Plaintiffs also allege that on June 16, 2015, a housing inspector named Kevin Jackson came to the Property with a police officer and attempted to force his way in to one of the tenant's units. Id. at 4. Further, Plaintiffs intimate that they suffered retaliation at the hands of the Village. Specifically, Plaintiffs claim that in March 2017, their property tax bills "were inflated by twenty-five (25%)[.] After we protested, they claimed an error. Why us?" Id.
2. Allegations Against Stephanie Valder
While the Amended Complaint makes reference to several individuals who allegedly conspired against Plaintiffs, only one, Stephanie Valder, is named as a defendant. As to Ms. Valder, Plaintiffs assert that "[o]n April 7, 2015, Ms. Ayesha K. Brantley, the Hempstead Village Justice, produced and released a twenty (20) page document to Reportiques Stenography Inc. (Stephanie Valder) for them to certify as being a transcript of [the] Court session on January 27, 2010 in the matter of Village Of Hempstead - vs. - Darlene F. Homere." Am. Compl. at 1. Plaintiffs state that they paid $250.00 to "Reportiques Stenography" for this transcript. Id. at 6. Because no hearing took place on January 27, 2010, Plaintiffs claim Valder fraudulently certified that the transcript "is a true, and accurate and complete transcription of the proceedings which took place." Id. at 1. According to Plaintiffs, by so certifying, "[Valder] knowingly participated in a scheme to cover up a crime and create liability for [Plaintiffs], aside from violating her oath." Id. at 6.
B. Relevant Procedural History
Plaintiffs filed the initial Complaint in this action on May 25, 2017. See DE 1. On June 20, 2017, Plaintiffs filed a motion to amend their Complaint, see DE 13, which was granted by Judge Bianco.[6] See DE 21. Plaintiffs filed their Amended Complaint on July 7, 2017. See DE 18. On August 14, 2017, the Village filed its motion to dismiss Plaintiffs' Amended Complaint, pursuant to *365 Federal Rule of Civil Procedure 12(b)(6). See DE 22. Shortly thereafter, on August 18, 2017 Valder filed a Rule 12(b)(6) motion to dismiss. See DE 23. On October 18, 2017, Judge Bianco referred both motions to dismiss to this Court for a Report and Recommendation as to whether they should be granted. See October 18, 2017 Electronic Order.
C. The Motions to Dismiss
1. The Village's Motion to Dismiss
The Village moves to dismiss the Amended Complaint under Rule 12(b)(6) on the grounds that (1) the Amended Complaint does not make out a claim for Section 1983 municipal liability; and (2) to the extent Plaintiffs assert any state law claims, Plaintiffs have failed to file a notice of claim against the Village. See generally The Village's Memorandum in Support of its Motion to Dismiss the Amended Complaint ("Village Mem.")[7] [DE 22-1].
2. Valder's Motion to Dismiss
Individual Defendant Valder also moves to dismiss, pursuant to Rule 12(b)(6), arguing that "Plaintiffs have failed to allege anything close to resembling a cognizable claim against Valder." Valder's Memorandum in Support of her Motion to Dismiss the Amended Complaint ("Valder Mem.") [DE 23-10] at 1. Specifically, Valder argues that Plaintiffs (1) fail to plead with any specificity how Valder "certified" a fake document, knowingly participated in a scheme to cover up a crime, or committed fraud; (2) fail to allege how Valder is individually liable for claims against the non-party corporate entity Reportique; (3) fail to allege how Valder participated in any scheme or conspiracy allegedly perpetrated by the Village; (4) fail to allege how the transcript prepared by Reportique was "fake" or otherwise inaccurate; and (5) fail to allege how Valder "knew" that the audio recording provided to her was not an accurate depiction of what occurred in court on the date in question, and therefore intentionally sought to defraud Plaintiffs. See id. at 2.
III. STANDARD OF REVIEW
In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the claims set forth in the complaint, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P. , 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); Grullon v. City of New Haven , 720 F.3d 133, 139 (2d Cir. 2013). The plaintiff must satisfy "a flexible 'plausibility standard.' " Iqbal v. Hasty , 490 F.3d 143, 157 (2d Cir. 2007), rev'd on other grounds sub nom . Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 546, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. 1955 ; see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC , 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level' ") (quoting Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ). As noted above, the pleadings of pro se Plaintiffs are afforded a liberal construction, and read "to raise the *366 strongest arguments that they suggest." McPherson , 174 F.3d at 280 ; Shin , 2014 WL 7422664, at *3 ; Erickson , 551 U.S. at 94, 127 S.Ct. 2197.
The Supreme Court clarified the appropriate pleading standard in Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), in which the Court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. First, district courts are to "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679, 129 S.Ct. 1937 ; see id. at 678, 129 S.Ct. 1937 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' ") (quoting Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ) ). Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft , 556 U.S. at 679, 129 S.Ct. 1937. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678, 129 S.Ct. 1937 (citing Twombly , 550 U.S. at 556-57, 127 S.Ct. 1955 ) (citations omitted).
In adjudicating a Rule 12(b)(6) motion, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied heavily upon in the complaint and, thus, are rendered "integral" to the complaint. See Chambers v. Time Warner, Inc. , 282 F.3d 147, 152-53 (2d Cir. 2002) ; see also ASARCO LLC v. Goodwin , 756 F.3d 191, 198 (2d Cir. 2014). To this end, the Court notes that Plaintiffs' memoranda in opposition to both motions include attachments that are not incorporated into the Amended Complaint by attachment or reference. See DE 24, DE 25. The Court in its discretion declines to consider these documents in its analysis. With respect to the documents attached to the Amended Complaint and incorporated therein, the Court exercises its discretion to consider these documents to the extent they bear upon the proper adjudication of the motions. See Chambers , 282 F.3d at 152-53 ; see also DiFolco v. MSNBC Cable L.L.C. , 622 F.3d 104, 111 (2d Cir. 2010).
IV. DISCUSSION
A. Claims Against the Village
Giving pro se Plaintiffs' Amended Complaint the liberal construction due, the Court here determines that Plaintiffs have attempted to plead the following claims against the Village and its officials based on the conduct alleged: (1) malicious prosecution; (2) violations of double jeopardy; (3) malicious abuse of process; (4) violations of substantive due process; (5) conspiracy; and (6) fraud. See generally Am. Compl. While Plaintiffs do not cite to or reference 42 U.S.C. § 1983, to the extent there is any authority allowing Plaintiffs to bring this suit, and to the extent Plaintiffs attempt to plead violations of their federal civil rights, it is Section 1983 which provides them a right of action. See Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (noting Section 1983"is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes"). The Court *367 will therefore review Plaintiffs' Amended Complaint from the standpoint that Plaintiffs bring their claims against the Village pursuant to 42 U.S.C. § 1983.
1. Threshold Issue: Younger Abstention
Before addressing the substance of Plaintiffs' claims, the Court must determine whether it is proper to exercise jurisdiction in light of the possibility of a pending action against Plaintiffs in the Village Court for the Village of Hempstead. Abstention under Younger v. Harris , 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)"generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." Diamond "D" Const. Corp. v. McGowan , 282 F.3d 191, 198 (2d Cir. 2002) (citing Younger , 401 U.S. at 43-44, 91 S.Ct. 746 ). A federal district court must decline exercising jurisdiction when "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." Diamond "D" Const. Corp. , 282 F.3d at 198 (citing Grieve v. Tamerin, 269 F.3d 149, 152 (2d Cir. 2001) ).
Regarding the first Younger requirement, several of Plaintiffs' allegations suggest that a Village Court proceeding[8] remains pending. Plaintiffs state that "as of March 2017, [their attorney] has not received confirmation of dismissal" of the charges against them. Am. Compl. at 2. Plaintiffs also state that the Village prosecutor denied having dismissed the first round of charges on January 27, 2010. Id. While Plaintiffs' factual assertions regarding the pendency and nature of any Village Court proceeding are inconsistent and difficult to discern,[9] to the extent there is a pending action against Plaintiffs in the Village Court, Younger 's first requirement is satisfied.
As to the second Younger requirement, determining whether a state interest is "important" turns not on the narrow outcome of the particular state court proceeding at hand, but rather on the importance of the generic proceedings to the state. New Orleans Pub. Serv., Inc. v. Council of City of New Orleans , 491 U.S. 350, 365, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ; see Grieve , 269 F.3d at 152 (noting that resolution of whether a state interest is "important" turns on whether "the state action concerns the central sovereign functions of state government"). It has long been held that issues involving public welfare and safety fall squarely within a state's plenary police powers and therefore implicate important state interests. See Medtronic, Inc. v. Lohr , 518 U.S. 470, 475, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) ("Throughout our history the several States have exercised their police powers to protect the health and safety of their citizens. Because these are primarily, and historically, ... matter[s] of local concern, the States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons.")
*368 (internal citations and quotations omitted). In this Circuit, several courts have held that enforcement of a local government's zoning code implicates important state interests. See Wandyful Stadium, Inc. v. Town of Hempstead , 959 F.Supp. 585, 590 (E.D.N.Y. 1997) ; Sendlewski v. Town of Southampton, 734 F.Supp. 586, 591 (E.D.N.Y.1990). As a local building code is a policy manifestation of that uniquely local interest in public health, wellness, safety, and comfort, the Court concludes that any enforcement proceedings against Plaintiffs initiated for violations of the Village building code satisfy Younger 's second requirement.
As to the third Younger requirement, there is no indication that the Village Court is unable to adequately adjudicate Plaintiffs' federal constitutional claims. While there is a recognized "bad faith" exemption to Younger whereby a federal court may "intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief,' " DeMartino v. New York State Dep't of Labor , 167 F.Supp.3d 342, 354 (E.D.N.Y. 2016), aff'd in part, dismissed in part , 712 Fed.Appx. 24 (2d Cir. 2017) (quoting Diamond "D" Const. Corp. , 282 F.3d at 198 ), for such a showing to be made, generally "the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome." Cullen v. Fliegner , 18 F.3d 96, 103 (2d Cir. 1994) ; see Diamond "D" Const. Corp. , 282 F.3d at 199 ("[A] state proceeding that is legitimate in its purposes, but unconstitutional in its execution - even when the violations of constitutional rights are egregious - will not warrant the application of the bad faith exception."). There is no indication that the Village had or has "no reasonable expectation" of obtaining a favorable outcome in its proceedings against Plaintiffs under the building code. In fact, Plaintiffs appear to admit that building code violations existed at the Property. See Am. Compl. at 4 ("Had the fire started in the dead of the night, the tenants on the second floor the very one that created these violations, would have faced tragedy .... Who would be to blame?"). And to the extent Plaintiffs allege that the proceedings against them are completely without merit, their "allegations are too conclusory and barebones to serve as the factual predicate for a plausible finding of bad faith." DeMartino , 167 F.Supp.3d at 355-56.
Based on the specific facts of this case, an exercise of abstention may be appropriate under Younger , but only to the extent there exists a pending building code enforcement proceeding against Plaintiffs in the Village Court -- and only to the extent Plaintiffs seek injunctive relief in the instant federal proceeding. See DeMartino , 167 F.Supp.3d at 356 (noting that abstention is inappropriate where a plaintiff seeks money damages for alleged constitutional violations pursuant to Section 1983 ). Since the Court cannot determine with certainty from the Amended Complaint or motion papers whether an enforcement action remains pending against Plaintiffs in the Village Court,[10] *369 and since "[a]bstention is a narrow exception to the generally broad duty on the part of federal courts to exercise jurisdiction" and is therefore "the exception, not the rule," Chittenden v. Connors , 460 F.Supp.2d 463, 468 (S.D.N.Y. 2006) (citing Planned Parenthood of Dutchess-Ulster, Inc., v. Steinhaus, 60 F.3d 122, 126 (2d Cir.1995) ), the Court will proceed to evaluate the sufficiency of Plaintiffs' claims.
2. Municipal Liability Under Section 1983
i. Legal Standard
Section 1983 imposes liability on, and creates a right of action against, anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." See Blessing v. Freestone , 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). To raise a successful claim under Section 1983, a plaintiff must sufficiently allege "that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Kohutka v. Town of Hempstead , 994 F.Supp.2d 305, 316-17 (E.D.N.Y. 2014) (quoting Snider v. Dylag , 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted) ).
In order to state a Section 1983 claim against a municipality, "a plaintiff must assert that the alleged violations were committed pursuant to an official policy, practice or custom." Holland v. The City of New York , 197 F.Supp.3d 529, 551 (S.D.N.Y. 2016) (citing Monell v. Dep't of Soc. Servs. , 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ); see Feliciano v. Cty. of Suffolk , 419 F.Supp.2d 302, 312 (E.D.N.Y. 2005). To successfully set forth such a claim, a plaintiff is required to plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." McLennon v. City of New York , 171 F.Supp.3d 69, 94 (E.D.N.Y. 2016) (quoting Torraco v. Port Auth. of N.Y. & N.J. , 615 F.3d 129, 140 (2d Cir.2010) ); see Simms v. City of N.Y. , 480 F. App'x 627, 629 (2d Cir. 2012). In order to establish the first element (i.e. , the existence of a policy or custom), a plaintiff may allege that one of the following exists: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Tieman v. City of Newburgh , No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015) (quoting Brandon v. City of New York, 705 F.Supp.2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted) ).
"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not 'suffice if it tenders naked assertion[s] devoid of further factual enhancement.' " McLennon , 171 F.Supp.3d at 94 (quoting Green v. City of Mount Vernon , 96 F.Supp.3d 263, 301-02 (S.D.N.Y. 2015) (citations omitted) ). Consequently, to survive a motion to dismiss a municipal liability claim, "a plaintiff must allege facts tending to support, at least circumstantially, an inference that ... a *370 municipal policy or custom exists." Santos v. New York City , 847 F.Supp.2d 573, 576 (S.D.N.Y. 2012) (citing Dwares v. City of New York , 985 F.2d 94, 100 (2d Cir. 1993) ); see Tieman , 2015 WL 1379652, at *13 ("Mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details.").
ii. Application to the Amended Complaint
Even construing the allegations in the Amended Complaint "to raise the strongest arguments that they suggest," McPherson, 174 F.3d at 280, the Court finds that Plaintiffs have failed to plead facts sufficient to implicate municipal liability against the Village under Section 1983. Although the Court could potentially overlook pro se Plaintiffs' failure to recite the specific language associated with Section 1983 municipal liability, namely, that the Village maintained an "official policy, practice or custom," Plaintiffs' allegations, even when viewed in the most favorable light, do not plausibly allege any of the circumstances through which a plaintiff can establish the existence of a municipal policy, practice, or custom.
As noted above, for Section 1983 municipal liability to attach, Plaintiffs' allegations must sufficiently set forth a deprivation of a constitutional right based on the existence of at least one of four factors: (1) a formal, officially endorsed policy; (2) actions taken by official municipal policymakers; (3) a widespread municipal practice so pervasive that supervising policymakers must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. See Tieman , 2015 WL 1379652 at *13 (citation omitted). The essence of Plaintiffs' claims against the Village is that its officials, in collusion with third parties, (including Plaintiffs' Section 8 tenants and a stenographer), concocted a "broad[ ] scheme to keep [Plaintiffs] distracted and preoccupied in order to facilitate the complete takeover of [their] property by Mr. Levy, an official in the treasurer's Office in the Village." Am. Compl. at 3. In this context, Plaintiffs allege that Village officials committed several discrete illegal acts: (1) Village attorneys made misrepresentations to either the Court and/or Plaintiffs regarding the judicial proceedings against them, id. at 2; (2) a Village official manipulated tax records for the purpose of taking ownership of Plaintiffs' property, id. at 3; and (3) Village officials in collusion with a private individual fabricated a transcript for a court proceeding that never took place. See id. at 2, 4-6. However, Plaintiffs have not set forth that any of this conduct constituted a formal, officially endorsed policy or practice of the Village. Nor are Plaintiffs able to show they suffered at the hands of official policymakers. Indeed, the only official policymaker referenced in the Amended Complaint, Mayor Hall, purportedly assisted Plaintiffs.[11] See Am. Compl. at 2. Plaintiffs' ability to allege the existence of a Village policy, practice, *371 or custom necessary for Section 1983 municipal liability would therefore depend on their ability to plausibly demonstrate either a widespread municipal practice or a failure by policymakers to provide adequate training or supervision. Plaintiffs' assertions are too speculative and conclusory to plausibly convey the existence of either of these circumstances.
The allegations of the Amended Complaint constitute a theory of conspiracy and harassment founded on little more than speculation. Plaintiffs attempt to support their theory by claiming that "everyone connected to the Village Attorney's Office and the Village Court must have known the illegality of [a certified transcript of an imaginary court session]," id. at 4, and by further asserting that Mr. Levy manipulated tax records by "simply logging on, enter[ing] a password and a few key strokes - no need for hacking a system that one is allowed to operate." Id. at 3. Similarly, Plaintiffs allege that "when Ms. Brantley the Village Justice, created the document referred to as [the] transcript, she was giving cover to the prosecutor (Mr. Feinberg) that fabricated records to validate our prosecution." Id. at 5. Again, these allegations are nothing more than "naked assertion[s] devoid of further factual enhancement," McLennon , 171 F. Supp.3d at 94 (citation omitted), and are representative of Plaintiffs' Amended Complaint generally. Indeed, Plaintiffs seem to concede the speculative nature of their claims in their motion papers, stating "[o]nly one thing we think we know for certain is that greed motivated Mr. Levy, one of the players. With regard to Ms. Brantley, Ms. DiSalvo, Mr. Feinberg and Mr. Simone speculation is all we have." Plaintiffs' Memorandum in Opposition to the Village's Motion to Dismiss ("Pls.' Opp'n.") [DE 24] at 4.
Due to the speculative nature of Plaintiffs' assertions and the absence of "facts tending to support, at least circumstantially, an inference that ... a municipal policy or custom exists," Santos , 847 F.Supp.2d at 576, Plaintiffs' allegations are insufficient to state a claim for municipal liability under Section 1983. See Reyes v. Fairfield Properties , 661 F.Supp.2d 249, 268 (E.D.N.Y. 2009) ("[C]onclusory assertions [contained in a complaint] are not entitled to the assumption of truth, and factual allegations must plausibly support the reasonable inference that plaintiffs are entitled to relief."); Sileo v. Principal Life Ins. Co. , No. 00-CV-1239, 2001 WL 366422, at *2 (N.D.N.Y. Apr. 10, 2001), aff'd , 29 F. App'x 765 (2d Cir. 2002) ("A pleading which consists of bald assertions and conclusory allegations unsupported by factual assertions 'will not suffice to state a claim.' "). Even if individual Village employees violated Plaintiffs' rights, in the absence of a municipal policy or custom, the Village "may not be held liable for these actions simply because they were committed by actors who were its employees." Dellutri v. Vill. of Elmsford , 895 F.Supp.2d 555, 566 (S.D.N.Y. 2012) ; Curry v. City of Syracuse, 316 F.3d 324, 330 (2d Cir.2003) ("[A] municipality may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees.") (internal quotation marks omitted) ); Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991) ("A municipality and its supervisory officials may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of respondeat superior.").
While Plaintiffs' Section 1983 claim against the Village must fail because Plaintiffs have not plausibly asserted the existence of a Village policy, practice, or custom, this claim must also fail because Plaintiffs have not plausibly asserted that they were deprived of a constitutional right. See Feliciano , 419 F.Supp.2d at 312 (noting that to successfully set forth a *372 claim for municipal liability under Section 1983, a plaintiff is required to plead the existence of "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right"). Plaintiffs reference, inter alia , the "4th, 5th, and 14th Amendments of the Constitution," Am. Compl. at 1, "malicious prosecution ... without probable cause," id. , and "double jeopardy." Id. at 2. However "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft, 556 U.S. at 678, 129 S.Ct. 1937. For the reasons stated above - i.e. , the absence of specific factual support and the ubiquity of bare, speculative assertions in the Amended Complaint - the Court cannot conclude that Plaintiffs have plausibly alleged the deprivation of a constitutional right.
Although the Court holds Plaintiffs' Amended Complaint to a less stringent standard of review, see Erickson , 551 U.S. at 94, 127 S.Ct. 2197, the Court concludes that Plaintiffs have failed to plausibly state the prerequisite conditions necessary to implicate municipal liability under Section 1983. As such, the Court respectfully recommends to Judge Bianco that Plaintiffs' claims against the Village based on municipal liability be dismissed.
3. Malicious Prosecution and Abuse of Process
Plaintiffs claim their lawsuit is "a malicious prosecution case" since they were "subjected to years of harassment by the Court" without probable cause. Am. Compl. at 1. Page 4 of Plaintiffs' Amended Complaint also lists a claim for "Abuse of Process." Liability for the torts of malicious prosecution and malicious abuse of criminal process fall under Section 1983. See Savino v. City of New York , 331 F.3d 63, 72, 76-77 (2d Cir. 2003) (citing Cook v. Sheldon , 41 F.3d 73, 80 (2d Cir. 1994) ). In New York, "[t]he elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice."[12] Savino , 331 F.3d at 72 (citation omitted). Similarly, "a malicious abuse-of-[criminal] process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Id. at 76.
Initially, Plaintiffs fail to assert the absence of either probable cause (with respect to their malicious prosecution claim) or "excuse of justification" (with respect to their malicious abuse of criminal process claim). To the contrary, Plaintiffs actually state that building code violations existed at the Property. See Am. Compl. at 4 ("Had the fire started in the dead of the night, the tenants on the second floor the very one that created these violations, would have faced tragedy.... Who would be to blame?"). Moreover, Plaintiffs' many bare assertions do not sufficiently state that the Village lacked probable cause, or possessed malice or a collateral objective to deprive Plaintiffs of their property.
Additionally, "[i]t is well settled that an essential element of a claim for malicious prosecution, under both New York law and under 42 U.S.C. § 1983, is that prosecution ha[s] been terminated in the plaintiff's favor."
*373 Rivera v. City of Rochester , 21 F.Supp.2d 230, 234 (W.D.N.Y. 1998) (citing Colon v. City of New York , 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983) ); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir.1995), cert. denied, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 ). The Amended Complaint fails to allege that Plaintiffs' prosecution was terminated in their favor. Although Plaintiffs state that "[i]n April, 2014, the charges were again dismissed," they claim several sentences later that "as of March 2017, [Plaintiffs' attorney] has not received confirmation of dismissal" of the charges against them. Am. Compl. at 2. Plaintiffs also state that the Village prosecutor denied having dismissed the first "round" of charges on January 27, 2010. Id. Additionally, Plaintiffs aver that in November 2013, Village officials realized "they were exposed" because Plaintiffs had retained an attorney, and, as a result, "the charges would have to be dismissed." Id. at 4 (emphasis added). The Court is unable to infer that any of the referenced building code violation proceedings terminated in Plaintiffs' favor, or were terminated at all.
Therefore, in addition to their failure to name as an individual defendant any Village official,[13] Plaintiffs have failed to make out a claim for either malicious prosecution or malicious abuse of criminal process. Consequently, the Court respectfully recommends to Judge Bianco that such claims be dismissed.
4. Double Jeopardy
The Amended Complaint purports to set out allegations supporting a claim for violation of Plaintiffs' "Double Jeopardy" rights. See Am. Compl. at 2. The Double Jeopardy Clause of the Fifth Amendment "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." Ohio v. Johnson , 467 U.S. 493, 498, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (citation omitted); United States v. Morgan , 51 F.3d 1105, 1113 (2d Cir. 1995) ("The Double Jeopardy Clause protects a person from prosecution for the same offense following either an acquittal or a conviction, and it protects also against multiple punishments for the same offense.") (citing North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) ). Importantly, "the [Double Jeopardy] 'Clause protects only against the imposition of multiple criminal punishments for the same offense,' and it thus does not extend to civil penalties." Dubin v. Cty. of Nassau , 277 F.Supp.3d 366, 398 (E.D.N.Y. 2017) (quoting Hudson v. United States , 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) ) (emphasis in original).
Simply put, Plaintiffs have failed to plead facts that plausibly support the theory that they have been either acquitted or convicted of criminal charges in the Village Court, that they have been prosecuted a second time following any conviction or acquittal, or that they have suffered multiple punishments for the same offense. Therefore, the Court respectfully recommends to Judge Bianco that any claim for violation of rights secured by the Double Jeopardy Clause be dismissed.
*374 5. Violations of Substantive Due Process
The Amended Complaint also fails to make out a claim for a violation of Plaintiffs' substantive due process rights. "Government conduct may be actionable under section 1983 as a substantive due process violation if it 'shocks the conscience.' " Spear v. Town of W. Hartford , 954 F.2d 63, 68 (2d Cir. 1992) (quoting Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952) ). "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity." Lombardi v. Whitman, 485 F.3d 73, 81 (2d Cir. 2007) (internal quotation marks and alteration omitted); Velez v. Levy, 401 F.3d 75, 93-94 (2d Cir. 2005) (noting that actions that shock the conscience occur "largely in the context of excessive force claims," but also unquestionably include other "malicious and sadistic abuses of power by government officials, intended to oppress or to cause injury and designed for no legitimate government purpose") (internal quotation marks omitted); Schultz v. Inc. Vill. of Bellport, 08-CV-0930, 2010 WL 3924751, at *6 (E.D.N.Y. Sept. 30, 2010) (noting this standard "is not easily met; the plaintiff must show the government conduct was egregious and outrageous, not merely incorrect or ill-advised") (quoting Ferran v. Town of Nassau, 471 F.3d 363, 369-70 (2d Cir.2006) ) (internal quotation marks omitted).
Ultimately, the Amended Complaint's assertions, even when taken as true and read in the light most favorable to Plaintiffs, fail to plausibly allege conduct that "shocks the conscience." As such, to the extent Plaintiffs attempt to plead a substantive due process claim, the Court respectfully recommends to Judge Bianco that such claim be dismissed.
6. Conspiracy
The gravamen of Plaintiffs' lawsuit is that multiple Village officials conspired with each other, as well as with private actors to harass and distract Plaintiffs with the ultimate goal of depriving them of their property. "In order to survive a motion to dismiss on [a] § 1983 conspiracy claim, [a plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. Cty. of Nassau , 292 F.3d 307, 324-25 (2d Cir. 2002) (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir.1999) ). "In addition, 'complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.' " Ciambriello , 292 F.3d at 325 (quoting Dwares , 985 F.2d at 100 (citations, internal quotation marks, and internal alterations omitted) ).
On pages 4 and 5 of the Amended Complaint, Plaintiffs attempt to lay out the roles of several Village officials in the alleged conspiracy. It is here Plaintiffs assert that "[e]veryone connected to the Village Attorney's Office and the Village Court must have known" that illegal conduct was transpiring. Am. Compl. at 4. It is also here that Plaintiffs allege that Village Justice Ayesha Brantley "was being deliberately ambiguous confirming her involvement in this illicit scheme," and that she "created the document referred to as [the] transcript" in order to "giv[e] cover to the prosecutor (Mr. Feinberg) that fabricated records to validate our prosecution." Id. at 4-5. Plaintiffs further contend that in order "[t]o protect this cover, the Village Attorney and Ms. Brantley the *375 Village Justice, coordinated their activities to keep us tied up in Court. To that end, they collude with Tiffany Carter, one of our Section 8 tenants for violations to be created." Id. at 5. As has already been observed, these assertions, and many others with which Plaintiffs attempt to support their conspiracy claim, are entirely speculative and conclusory. Perhaps most notably, Plaintiffs fail to allege "details of time and place" with respect to the alleged conspiratorial conduct. Dwares , 985 F.2d at 100. To the extent specific years or dates are referenced, they relate to the ongoing Village Court proceedings and do not in a plausible way illuminate the relationship between the alleged conspirators, or any "specific instances of misconduct." Ciambriello , 292 F.3d at 325. For these reasons, Plaintiffs fail to state a claim of conspiracy pursuant to 42 U.S.C. § 1983, and the Court respectfully recommends to Judge Bianco that such claim be dismissed.[14]
7. State Law Claims
As the Village observes in its motion to dismiss, "[s]ervice of a notice of claim - the contents of which are prescribed by section 50-e of the General Municipal Law and section 7401 of McKinney's Unconsolidated Laws of N.Y. - is a condition precedent to a lawsuit against a municipal corporation." Davidson v. Bronx Mun. Hosp. , 64 N.Y.2d 59, 61, 484 N.Y.S.2d 533, 534, 473 N.E.2d 761, 762 (1984) ; Brown v. Metro. Transp. Auth. , 717 F.Supp. 257, 259 (S.D.N.Y. 1989) ("According to New York law, a notice of claim, pursuant to § 50-e is a mandatory condition precedent to the bringing of a tort claim against a public corporation.... Absent a showing of such a notice of claim, the complaint may be dismissed for failure to state a cause of action.") (citation omitted).
Plaintiffs do not dispute that they have not filed a notice of claim with the Village. Rather, Plaintiffs argue that as a result of their own conduct, the Village had "constructive knowledge that a claim was being pursued." Pls.' Opp'n. at 2-3. To the extent courts have recognized anything akin to a doctrine of "constructive notice" in the context of Section 50-e, the doctrine "has been used to justify granting an application to serve a late notice of claim, not to obviate serving such a notice." Oshinsky v. New York City Hous. Auth. , No. 98 CIV 5467, 2000 WL 218395, at *14 n.5 (S.D.N.Y. Feb. 23, 2000) (citations omitted); see Hilow v. Rome City School District, No. 91-CV-567, 1994 WL 328625, *8 (N.D.N.Y. June 29, 1994) (rejecting plaintiff's assertion of "constructive notice" as a substitute for serving a notice of claim, and noting that "the court's independent research [failed to] uncover any authority" supporting constructive notice). Since it is undisputed that Plaintiffs failed to file a notice of claim with the Village, the Court respectfully recommends to Judge Bianco that the state law claims Plaintiffs have attempted to raise be dismissed.
B. Claims Against Valder
1. Failure to State a Claim
While it is unclear exactly what claims Plaintiffs are attempting to raise against individual Defendant Valder, a favorable *376 reading of the Amended Complaint leads the Court to conclude that Plaintiffs seek to assert a claim of conspiracy, pursuant to Section 1983, and a claim for common law fraud. Plaintiffs fail to sufficiently state either cause of action.
i. Conspiracy Under Section 1983
Generally speaking, private actors are not proper defendants in Section 1983 actions. Am. Mfrs. Mut. Ins. Co. v. Sullivan , 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (internal quotations omitted). However, in limited circumstances, a cause of action under Section 1983 may lie against an individual who is sufficiently implicated in state action. See Jae Soog Lee v. Law Office of Kim & Bae, PC , 530 F. App'x 9, 9-10 (2d Cir. 2013). "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." Spear, 954 F.2d at 68. That is to say, "a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.' " Ciambriello , 292 F.3d at 324 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Importantly, merely conclusory allegations that a private entity acted in concert with a state actor does not suffice to state a Section 1983 claim against the private entity. Ciambriello , 292 F.3d at 324 (citing Spear, 954 F.2d at 68 ).
Plaintiffs have failed to allege specific facts demonstrating that an improper relationship existed between any Village official and Valder, let alone one that was formed with the intent to harm Plaintiffs. The only allegation Plaintiffs make which connects the Village to Valder is the allegation that Valder stated to Plaintiffs "[a]nything in and out of the Court is reviewed and approved by the Judge." Am. Compl. at 5. The only other allegation pertaining to Valder is that she certified a 20-page document which falsely purported to be a transcript of a court proceeding that took place on January 27, 2010. Id. at 1, 5-6. These allegations are insufficient to show that (1) Valder acted in concert with any Village official (2) to commit an unconstitutional act. Cf. Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc., 850 F.2d 876, 880-81 (2d Cir.1988) (determining that a complaint alleged sufficient facts to support a conclusion that private-actor PBA had acted under color of state law, where complaint alleged that PBA had hired private investigators and placed plaintiff under surveillance with knowledge and consent of state-actor New York City Police Department). To the extent the Amended Complaint attempts to raise a Section 1983 conspiracy claim against Valder, the Court respectfully recommends to Judge Bianco that the claim be dismissed.
ii. Fraud
In New York, to state a claim for common law fraud, a plaintiff must allege "a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." May Dep't Stores Co. v. Int'l Leasing Corp. , 1 F.3d 138, 141 (2d Cir. 1993). It is well settled that in order to adequately plead a claim of fraud, a plaintiff must satisfy a heightened pleading standard as set forth in Federal Rule of Civil Procedure 9(b). Specifically, "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b) ; see Abercrombie v. Andrew Coll. , 438 F.Supp.2d 243, 274 (S.D.N.Y. 2006) ("[T]he elements of a *377 breach of fiduciary duty based in fraud must be plead with particularity.").
Plaintiffs have failed to allege facts sufficient to plausibly show any of the elements of common law fraud. The Amended Complaint is devoid of anything other than conclusory assertions that the certified transcript is "fake," Am. Compl. at 5, and that Valder had an intent to make a false representation. Id. at 6. As to intent, Plaintiffs make only the bare assertion that Valder "certif[ied] a transcript of a Court session that never took place. In so doing, she knowingly participated in a scheme to cover up a crime and create liability for us, aside from violating her oath." Id. Likewise, there is nothing in the Amended Complaint with regard to either Plaintiffs' reliance on the alleged false representation, or any detriment resulting from such reliance. The Court respectfully recommends to Judge Bianco that the fraud claim be dismissed accordingly.
V. CONCLUSION
For the foregoing reasons, the Court respectfully recommends to Judge Bianco that both Defendants' motions to dismiss be GRANTED.
VI. OBJECTIONS
Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of Judge Joseph F. Bianco and to the Chambers of Judge A. Kathleen Tomlinson. Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections . Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn , 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; Beverly v. Walker , 118 F.3d 900, 901 (2d Cir. 1997), cert. denied , 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997) ; Savoie v. Merchants Bank , 84 F.3d 52, 60 (2d Cir. 1996).
SO ORDERED .
Dated: February 1, 2018

Plaintiffs filed the original complaint in this action on May 25, 2017. (ECF No. 1.) After defendants requested a pre-motion conference in anticipation of moving to dismiss the complaint, and the Court set a briefing schedule, plaintiffs moved to amend the complaint. (ECF Nos. 11-13.) Plaintiffs then filed an amended complaint on July 7, 2017, before defendants had submitted any opposition to the motion to amend or the Court had acted on the motion. (ECF No. 18.) On July 18, 2017, the Court granted plaintiffs' motion to amend nunc pro tunc. (ECF No. 21.)

As Magistrate Judge Tomlinson correctly noted, although the complaint fails to invoke 18 U.S.C. § 1983, that statute provides the authority to bring these claims against the Village. The Court, like Magistrate Judge Tomlinson, will therefore review the complaint and R&R as though plaintiffs had invoked Section 1983.

Magistrate Judge Tomlinson also conducted a thorough analysis as to whether Younger abstention is appropriate here, and concluded that, because "the Court cannot determine with certainty from the Amended Complaint or motion papers whether an enforcement action remains pending against Plaintiffs in the Village Court" and because abstention is a "narrow exception to the generally broad duty on the part of federal courts to exercise jurisdiction," abstention was not warranted. (R&R 10-14.) The Court agrees.

Although plaintiffs have already amended the complaint, the first amended complaint was filed prior to any decision by the Court identifying the pleading defects. Thus, in its discretion, the Court concludes that, now having notice of the pleading defects from the Court, plaintiffs should be given one more opportunity to address the defects.

Because the allegations in the Amended Complaint are not organized in consecutively numbered paragraphs, or numbered paragraphs generally, the Court's citations to the Amended Complaint are made by page number.

Plaintiffs claim they were charged despite being told by the building inspector that he would not charge Plaintiffs for any violations. Am. Compl. at 4.

Plaintiffs allege that as of March 2017, Mr. Davis had not received confirmation of any dismissal. Am. Compl. at 2.

The Amended Complaint asserts that Mr. Feinberg lied to the Village Court in stating that Plaintiffs had requested an adjournment in July 2014 for completing repairs at the Property. Am. Compl. at 4. They claim the Property was vacant at this time and boarded up as the result of an April 2, 2014 fire on the first floor. Id. Exactly when this alleged misrepresentation was made is not clear. Nor is it clear if these "charges" were part of the second "round" of proceedings which Plaintiffs reference.

It is not clear from the Amended Complaint whether and when Plaintiffs claim ownership was actually transferred to Mr. Levy.

Judge Bianco granted the motion on July 18, 2017, after Plaintiffs had already filed their Amended Complaint.

Although not addressed in its moving papers, in its letter to Judge Bianco requesting a pre-motion conference, the Village also argued that Plaintiffs had failed to plead the elements of malicious prosecution in New York, and that any malicious prosecution claim would be barred by the statute of limitations. See DE 8.

Abstention doctrines are applicable to municipal proceedings. See Fund v. City of New York , No. 14 CIV. 2958, 2014 WL 2048204, at *7 (S.D.N.Y. May 19, 2014) (citing Univ. Club v. City of New York , 842 F.2d 37, 37 (2d Cir. 1988) ).

The Amended Complaint does not make clear exactly how or when ownership of the Property actually changed hands. While certain assertions suggest that there may be some legal action pending against Plaintiffs related to the Property, if Plaintiffs no longer own the Property due to a failure to pay their property taxes, it is not clear how proceedings to enforce the building code could remain pending against them.

If Village Court proceedings have concluded with Plaintiffs losing, and if Plaintiffs' Amended Complaint is construed as a challenge to that outcome, this Court could potentially be precluded from exercising jurisdiction under the Rooker-Feldman doctrine. The Rooker-Feldman doctrine stands for "the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." Hoblock v. Albany County Bd. of Elections , 422 F.3d 77, 84 (2d Cir. 2005). Similarly, under the rule set out in Heck v. Humphrey , 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), federal district courts are precluded from entertaining Section 1983 suits which challenge the validity of state court criminal convictions or sentences. Given the inability of the Court to determine the nature and pendency of any Village Court proceedings against Plaintiffs, the Court declines to address these or similar doctrines of abstention or preclusion.

Village judicial employees, including Village Justice Ayesha Brantley, are not policymakers for purposes of Section 1983 municipal liability. See Dellutri v. Vill. of Elmsford , 895 F.Supp.2d 555, 567 (S.D.N.Y. 2012) ("[M]ultiple district courts within the Second Circuit have determined that under New York law, village and similar judges are not considered village policymakers for the purposes of evaluating a Monell claim.").

In addition, the Second Circuit has noted that a "plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must ... show some deprivation of liberty consistent with the concept of seizure." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 116 (2d Cir.1995). The Court does not address whether Plaintiffs have sufficiently pleaded "seizure." See Am. Compl. at 6.

Even had Plaintiffs named the Village prosecutor as a defendant, "[i]t is by now well established that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution' 'is immune from a civil suit for damages under § 1983.' " Norton v. Town of Brookhaven , 33 F.Supp.3d 215, 229 (E.D.N.Y. 2014), on reconsideration , 47 F.Supp.3d 152 (E.D.N.Y. 2014) (quoting Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) ).

Even assuming Plaintiffs had sufficiently pleaded a conspiracy claim, such a claim would be barred by the "intra-corporate conspiracy doctrine." "The intracorporate conspiracy doctrine 'bars conspiracy claims alleging concerted action by employees and/or the heads of various departments within a single municipal entity, at least where the complaint fails to allege that the various [municipal] entities were effectively acting as separate entities in carrying out the alleged conspiracy.' " Broich v. Inc. Vill. of Southampton , 650 F.Supp.2d 234, 247 (E.D.N.Y. 2009) (quoting Dunlop v. City of New York, No. 06 Civ. 0433, 2008 WL 1970002, at *9 (S.D.N.Y. May 6, 2008) ).